**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3962
_____

UNITED STATES OF AMERICA

v.

JORGE LUIS ROSA-HERNANDEZ,
                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-18-cr-00315-001)
District Judge: Hon. John E. Jones III
_____

Submitted under Third Circuit L.A.R. 34.1(a)
September 29, 2020
_____

Before: SHWARTZ, PHIPPS, and SCIRICA, <u>Circuit Judges</u>.

(Filed: October 1, 2020)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

SHWARTZ, Circuit Judge.

Jorge Luis Rosa-Hernandez appeals his sentence for unlawfully possessing a firearm as a convicted felon, arguing that the District Court erred in finding that his uncharged unlawful possession of other firearms was relevant conduct under § 1B1.3(a)(2) of the United States Sentencing Guidelines. Because the Court did not clearly err in attributing the uncharged conduct to Rosa-Hernandez to calculate his sentence, we will affirm.

I

On February 13, 2018, Rosa-Hernandez possessed and sold two firearms to a confidential informant ("February possession"). On that day, a .45 caliber pistol was purchased in Rosa-Hernandez's wife's name. In April 2018, Rosa-Hernandez possessed that pistol. Specifically, on April 29, 2018, Rosa-Hernandez and his family went to a McDonald's and, after seeing some "shady people," he retrieved the gun from his wife's car. The gun subsequently fired and pierced his daughter's leg ("April possession"). Law enforcement later recovered the firearm from a nightstand drawer at Rosa-Hernandez's home.

Rosa-Hernandez pleaded guilty to unlawful possession of a firearm by a convicted felon based on the April possession, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The presentence investigation report ("PSR") included the February possession as relevant conduct in its Guidelines calculation, which added: (1) a two-level enhancement because the two events involved between three and seven firearms under U.S.S.G. § 2K2.1(b)(1)(A); (2) a two-level enhancement because the February possession involved

2

a stolen firearm under U.S.S.G. § 2K2.1(b)(4)(A); and (3) a four-level enhancement because the conduct included the trafficking of firearms under U.S.S.G. § 2K2.1(b)(5). As a result, Rosa-Hernandez's total offense level was thirty-two and his criminal history category was IV, yielding a Guidelines range of 168 to 210 months' imprisonment. Because the charged offense's statutory maximum was ten years, Rosa-Hernandez's Guidelines range was 120 months.

Rosa-Hernandez objected to the PSR, arguing that the Probation Office should not have included the February possession as relevant conduct. After hearing testimony from a detective and a confidential informant involved in the February possession, the District Court overruled Rosa-Hernandez's objection, finding that the February possession was part of the same course of conduct as the charged offense, and thus was relevant conduct under § 1B1.3(a). The Court then varied downward and sentenced Rosa-Hernandez to ninety-six months' imprisonment. Rosa-Hernandez appeals.

II[1]

"Under the Sentencing Guidelines, the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and

_____

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

"We exercise plenary review over the construction of the Sentencing Guidelines themselves," United States v. Douglas, 885 F.3d 145, 150 n.3 (3d Cir. 2018), and "review for clear error the District Court's determination of what constitutes 'relevant conduct' for purposes of sentencing," United States v. West, 643 F.3d 102, 105 (3d Cir. 2011). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007) (en banc) (internal quotation marks and citation omitted)).

3

not just with regard to the conduct underlying the offense of conviction." Witte v. United States, 515 U.S. 389, 393 (1995). Section 1B1.3 of the Guidelines defines relevant conduct. Section 1B1.3(a) has four subsections. The parties agree that subsection (a)(2) governs this case.[2]

To qualify as relevant conduct under § 1B1.3(a)(2), the conduct must meet three conditions: "(1) it must be the type of conduct described in § 1B1.3(a)(1)(A) and (B) . . . ; (2) grouping would be appropriate under § 3D1.2(d); and (3) it must have been 'part of the same course of conduct or common scheme or plan.'" United States v. Blackmon, 557 F.3d 113, 123 (3d Cir. 2009) (omission in original) (quoting U.S.S.G. § 1B1.3(a)(2)). Rosa-Hernandez challenges only the first and third conditions.

## A

As relevant here, the first condition under § 1B1.3(a)(2) requires that the conduct be the type "described in subdivision[] (1)(A)" of subsection (a). Subdivision (1)(A) captures "all acts and omissions committed . . . by the defendant."[3] Because Rosa-

---

[2] "Section (a)(2) applies 'when the offense of conviction is a groupable offense, regardless of the nature of the alleged relevant conduct.'" United States v. Kulick, 629 F.3d 165, 170 (3d Cir. 2010) (quoting Jansen v. United States, 369 F.3d 237, 248 (3d Cir. 2004)). As Rosa-Hernandez concedes, the charged conduct here—unlawful possession of a firearm by a felon, which is governed by U.S.S.G. § 2K2.1—requires grouping under U.S.S.G. § 3D1.2(d).

[3] Rosa-Hernandez argues that "relevant conduct" must occur during the commission of, preparation for, or as part of an effort to conceal the offense of conviction. He is incorrect. That requirement applies only when subsection (a)(1) of U.S.S.G. § 1B1.3 is the basis for the relevant conduct determination. Subsection (a)(1) does not apply here. Rather, because the conduct at issue is groupable, we apply subsection (a)(2). Groupable conduct captures more than conduct that occurs during, in preparation of, or to conceal the offense of conviction. See U.S.S.G. § 1B1.3 cmt. background (observing that "[s]ubsections (a)(1) and (a)(2) adopt different rules");

4

Hernandez possessed firearms as a convicted felon in both February 2018 and April 2018, the first condition of § 1B1.3(a)(2) is "easily satisfied." United States v. Kulick, 629 F.3d 165, 170-71 (3d Cir. 2010).

B

The February possession was also "part of the same course of conduct . . . as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Offenses are part of the same course of conduct "if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3 cmt. (n.5(B)(ii)). Three factors guide this determination: (1) "the degree of similarity of the offenses," (2) "the regularity (repetitions) of the offenses," and (3) "the time interval between offenses." United States v. Wilson, 106 F.3d 1140, 1143 (3d Cir. 1997) (quoting U.S.S.G. § 1B1.3 cmt. (n.9) (effective Nov. 1, 1994)). "Importantly, the test is a sliding scale, so '[e]ven if one factor is absent,' relevant conduct may be found where at least one other factor is strong." Kulick, 629 F.3d at 171 (alteration in original) (quoting Wilson, 106 F.3d at 1143)).

As to the first factor, the District Court did not clearly err in finding sufficient similarity between the February and April possessions. In analyzing this factor, we "consider the degree of similarity between the offenses." Id. at 172. Although the

---

United States v. Johnson, 347 F.3d 635, 640 (7th Cir. 2003) ("Subsection (a)(2) allows a court to consider a broader range of conduct than does . . . (a)(1)."). Moreover, as the Government correctly notes, had the Sentencing Commission intended to have (a)(1) and (a)(2) cover the same offenses, then it would have simply referred to the entire subsection (a)(1) rather than specify subdivisions (1)(A) and (1)(B).

5

February possession and the April possession involved the possession of different firearms for different purposes, the events share a common thread: each necessarily involved Rosa-Hernandez's unlawful possession of a firearm as a felon.[4] See United States v. Garcia, 946 F.3d 1191, 1204-05 (10th Cir. 2020) (observing that sentencing

<hr />

[4] Although one could view the offense that occurred in February as an illegal gun sale, and hence it could be viewed as being dissimilar from the April possession for self-defense, the two events still bear a strong similarity, as both were committed by a person who was a convicted felon who unlawfully possessed the firearms. Furthermore, while the commentary to the Guidelines encourages sentencing courts to consider whether there is a "common purpose" or "similar modus operandi" when assessing relevant conduct, that guidance is in the context of determining whether there is sufficient evidence of a "common scheme or plan" and not whether there is a similar "course of conduct." Compare U.S.S.G. § 1B1.3(a) cmt. (n.5(B)(i)), with U.S.S.G. § 1B1.3(a) cmt. (n.5(B)(ii)). Here, the District Court considered the February and April possessions as part of a "course of conduct."

Moreover, based on this record, the February sale may not have been prosecutable under federal law. See United States v. Tyson, 653 F.3d 192, 200-01 (3d Cir. 2011). To prosecute an unlicensed individual for unlawfully dealing in firearms under 18 U.S.C. § 922(a)(1)(A), the Government must prove, among other things, that the person who engaged in such activity had an economic objective and "pursue[d] this objective through the repetitive purchase and resale of firearms." Id. The record before the District Court does not appear to satisfy these elements and thus the Court properly viewed the February event as possession of a firearm by a convicted felon, rather than as the offense of dealing in firearms. See West, 643 F.3d at 112 (instructing that a preponderance of the evidence must support sentencing factors, including relevant conduct).

The lack of proof for such a different offense makes this case distinguishable from Kulick. In Kulick, we held that an extortion that occurred twenty-seven months before the felon-in-possession offense for which the defendant was convicted was too dissimilar from the offense of conviction to be deemed relevant conduct. 629 F.3d at 172-73. Notably, however, the extortion offense was a cognizable and charged federal crime. See id. at 166. Thus, it made sense for the Kulick Court to compare the extortion offense and the felon-in-possession offense. Here, the sale aspect of the February possession on which Rosa-Hernandez would like us to focus would not have been conduct that could have been federally chargeable on this record. See Tyson, 653 F.3d at 200-01. As a result, the District Court correctly focused on the conduct that could have constituted a chargeable federal offense in determining whether the two events were similar.

courts need not "parse the factual circumstances under which individual guns" are possessed on different dates, such as where they were possessed or how they were used, "in reaching similarity determinations" because there is no authority providing that they "are distinctions with a material difference on the question of similarity"). Therefore, the District Court did not clearly err in finding that the April possession and the February possession satisfy the similarity requirement.[5] See Kulick, 629 F.3d at 173 (collecting cases that "stand for the proposition that one count of unlawful possession of a firearm is similar to a second count of unlawful possession of a firearm, and is therefore relevant conduct").

Even assuming that the regularity factor, which considers how often the offense is repeated, Kulick, 629 F.3d at 173, does not favor concluding that the February gun possession was part of the "same course of conduct," Rosa-Hernandez concedes the two events were temporally proximate. Rosa-Hernandez possessed the February firearms just two and a half months before the charged offense. See Wilson, 106 F.3d at 1144 (collecting cases and observing that "offenses that precede the offense of conviction by as much as 17 months" are sufficiently proximate); see also United States v. West, 643 F.3d 102, 111 (3d Cir. 2011) (concluding "the five-month interval between [two gun possessions] met the requirement of temporal proximity"); Kulick, 629 F.3d at 173

---

[5] Furthermore, there is another connection between the February and April events. The firearm Rosa-Hernandez possessed in April was purchased on the same day he possessed the guns that were sold in February.

(collecting cases establishing "unlawful possession of a firearm in one year may be relevant conduct to unlawful possession of a firearm in another year").

Therefore, the District Court did not clearly err in concluding that the February and April possessions were part of the same course of conduct under § 1B1.3(a)(2). As a result, the Court did not err in deeming the February possession relevant conduct for sentencing guideline purposes.

## III

For these reasons, we will affirm Rosa-Hernandez's sentence.